UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HEATHER L. MACK<br>Defendant | No. 17 CR 518<br><br>Honorable Matthew F. Kennelly |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT TWO OF THE INDICTMENT**

The UNITED STATES OF AMERICA, by and through the undersigned attorneys, respectfully submits this response in opposition to defendant Heather L. Mack's Motion to Dismiss Count Two of the Indictment (hereinafter, "Motion"). As explained below, the defendant incorrectly applies the limitations on prosecution found in 18 U.S.C. § 1119, a different statute than the one charged in the indictment (18 U.S.C. § 1117). Additionally, the defendant fundamentally misconstrues Congress' authority to enact criminal statutes that concern foreign activity. As explained below, with only a cursory legal analysis and no other supporting legal authority for either position, the defendant fails to meet the high burden of proof necessary to dismiss Count Two of the indictment and find unconstitutional a properly enacted statute.

I. **Procedural Background**

    A. <u>The Indictment and Factual Background</u>

On or about July 26, 2017, a grand jury sitting in the Northern District of Illinois returned a sealed indictment charging defendant Heather L. Mack with

Conspiracy to Commit Murder, in violation of Title 18, United States Code, Section 956(a)(1) and (2)(A)(Count 1); Conspiracy to Commit Foreign Murder of United States National, in violation of Title 18, United States Code, Section 1117 (Count 2); and Obstruction of Justice, in violation of Title 18, United States Code, Section 1512(c)(1) and (2) (Count 3).  *See* Dkt. 1.

The indictment alleges that Mack entered into a conspiracy with co-defendant Tommy Schaefer (Schaefer) to kill her mother, Sheila Von Wiese, while Mack and Von Wiese were on vacation in Bali, Indonesia.  According to the indictment, the defendant and her mother traveled to Bali on or about August 2, 2014.  As part of the planned murder, the defendant used her mother's credit card to purchase a $12,000 airline ticket for Schaefer to fly from Chicago to Bali.  Schaefer arrived in Bali just after midnight on August 12, 2014.  Hours later, the defendant and Schaefer killed Von Wiese inside her hotel room.

Mack and Schaefer were arrested and prosecuted in Indonesia for crimes related to the murder of Von Wiese.  In 2015, Mack was convicted of being an accessory to murder and sentenced to 10 years in prison.  Schaefer was convicted of murder and sentenced to 18 years in prison.  Schaefer remains incarcerated in Indonesia.

In late October 2021, after Indonesian officials reduced Mack's sentence under applicable law, the defendant was released from custody in Indonesia and returned the United States.  Mack arrived at O'Hare International Airport on November 3,

2021, and was arrested upon arrival. The indictment was unsealed after her arrest. *See* Dkt. Nos. 17 and 18.

      B.     <u>The Motion to Dismiss</u>

On February 12, 2023, the defendant filed the Motion. Dkt. 81. The Motion seeks dismissal of Count Two on two grounds. First, the defendant claims the government failed to obtain approval of the Attorney General to prosecute the defendant, as required by 18 U.S.C. § 1119, and that Section 1119 prohibits a prosecution of the defendant in the United States because she was previously prosecuted in Indonesia for the same conduct. Second, the defendant claims that 18 U.S.C. § 1119 is facially unconstitutional because Congress lacked authority to enact the statute.

**II.    The Defendant is Charged with Conspiracy Pursuant to 18 U.S.C. § 1117, Which Does Not Contain the Limitations on Prosecution Described in § 1119 and Does Not Require Attorney General Approval**

The defendant moves to dismiss Count Two of the indictment, arguing that the government failed to obtain the approval of the Attorney General, as required by 18 U.S.C. § 1119, and because § 1119 prohibits a prosecution in the United States if a defendant was prosecuted in a foreign country for the same conduct. It is undisputed that Mack was prosecuted in Indonesia in connection with the murder of her mother. The defendant's position is flawed because she is charged with a conspiracy pursuant to § 1117, which is a separate and distinct criminal offense that contains no such limitations.

    A.    <u>Conspiracy and Substantive Statutes are Distinct and Different Offenses</u>

The defendant is not charged with the substantive offense found in § 1119, rather the defendant is charged with a conspiracy, under § 1117, a different statute with no such limitations on prosecution. The defendant is attempting to improperly bootstrap the § 1119 limitations to a separate criminal offense, § 1117.

Section 1117 makes it a crime to enter into a conspiracy to commit federal murder and manslaughter crimes, including crimes committed extraterritorially. Section 1117 provides: [i]f two or more persons conspire to violate section 1111, 1114, 1116, or 1119 of this title, and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life."

Section 1119, on the other hand, is the substantive offense making it a crime to commit murder. Section 1119 provides in relevant part: "[a] person who, being a national of the United States, kills or attempts to kill a national of the United States while such national is outside the United States but within the jurisdiction of another country shall be punished as provided under sections 1111, 1112, and 1113."

It is well settled that conspiracy and a substantive offense, which is the object of the conspiracy, are separate and distinct offenses. *Pinkerton v. United States*, 328 U.S. 640, 643 (1946) ("It has been long and consistently recognized by the Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of Congress to separate the two and to affix to each a different penalty is well established.").

4

The defendant points to no case law in support of her position, and the government is aware of none. Even so, the Supreme Court's decision in *Callanan v. United States*, 364 U.S. 587 (1961), severely undercuts the defendant's position. In *Callanan*, the defendant was convicted of conspiracy to obstruct commerce as well as the substantive offense of obstructing commerce, and then sentenced to consecutive punishments for each count. On appeal, Callanan argued that because the conspiracy provision was contained within the *same* statutory provision as the substantive offense (*i.e.* 18 U.S.C. § 1951), he could not be subject to two penalties. *Callanan*, 364 U.S. at 589. Unlike the Motion before this Court, which effectively asserts that § 1117 and § 1119 are one in the same, the petitioner in *Callanan* did not go so far, and argued only that he could not be punished separately for the conspiracy and the substantive offense. However, the Supreme Court rejected this approach and reaffirmed that conspiracy to commit an offense and the substantive offense are separate offenses and may be punished consecutively. *Callanan*, 364 at 592-595. That is the case even when the conspiracy and substantive offense are contained within the same statutory provision, such as with the statute at issue in *Callanan*. It therefore must also be the case when the conspiracy and substantive offenses are contained in *separate* statutory sections.[1]

Further undermining the defendant's statutory interpretation, the Supreme Court in *Callanan* also stated, "[w]e attribute 'to Congress a tacit purpose—in the

---

[1] As noted below, Section 1119 was enacted over 20 years after Section 1117, further supporting the fact these are separate statutes.

absence of any inconsistent expression—to maintain a long-established distinction between offenses essentially different; a distinction whose practical importance in the criminal law is not easily overestimated." *Id.*, at 594. Thus, unless Congress specifically eliminated the distinction between the conspiracy in § 1117 and the substantive offense in § 1119, the Supreme Court holds that these are treated as separate and distinct offenses. The offenses here, consist of two separate statutes, enacted at different times, are distinct and therefore must be viewed as entirely separate offenses that do not impute the requirements of one onto the other.

In summary, the legal rationale that a conspiracy and a substantive offense are separate and distinct has been a mainstay in federal criminal law jurisprudence for over 70 years. The defendant would have this Court ignore and upend this precedent. The defendant's Motion fails to even address this dispositive issue. Because § 1119 is separate and distinct offense, its limitations on prosecution cannot be transferred or attributed to the separate conspiracy statute that contains no such limitation.

      B.    <u>Congressional Intent and the Plain Reading of the Statutes Does Not Apply the Limitations on Prosecution to Section 1117</u>

The plain reading of the statutes does not support application of the § 1119 limitations to § 1117. Section 1119(c)(1) states, "No prosecution may be instituted against any person *under this section* except ..." 18 U.S.C. § 1119(c)(emphasis added). Additionally, § 1119(c)(2) states, "No prosecution shall be approved *under this section* except ..." 18 U.S.C. § 1119(c)(emphasis added). Thus, a plain reading of § 1119

6

instructs that the statutory limitations contained in (c)(1) and the approval requirements in (c)(2) apply *only* to § 1119.

In addition to the well-settled precedent that conspiracy and substantive offenses are distinct, the legislative history of § 1117 and § 1119 demonstrates that Congress intended the two sections to be separate offenses. Section 1117 predates § 1119 by more than twenty years. Prior to 1994, § 1117 covered conspiracy to violate § 1111 (First and Second Degree Murder), § 1114 (Murder of a United States Employee Overseas), and § 1116 (Murder of an Internationally Protected Person). Section 1117 was amended in 1994, the same year that § 1119 was enacted, to include Section 1119 to its list of substantive murder offenses which could form the basis of a federal murder conspiracy charge.

On September 13, 1994, Congress passed the Violent Crime Control and Law Enforcement Act of 1994 creating 18 U.S.C. § 1119. Pub. L. No. 103-322, Title VI, § 60009(b)(1), 108 Stat. 1972 (1994). Though Congress was clearly aware of § 1119's limitation and approval clauses, Congress did not insert similar language into § 1117 when it was amended. Additionally, there is no mention in the congressional record, committee reports, or hearing transcripts that Congress intended the limitation or approval clauses to apply to § 1117.

In *Russello v. United States*, 464 U.S. 16, 23 (1983), the Supreme Court held that "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." In

7

analyzing a RICO forfeiture provision, the Supreme Court rejected the argument that limitations concerning the term "interest" in one section of the statute placed the same limitations under another section of the *same* statute. The Supreme Court stated that "[h]ad Congress intended to restrict § 1963(a)(1) to an interest in an enterprise, it presumably would have done so expressly as it did in the immediately following subsection (a)(2) … [t]he short answer is that Congress did not write the statute that way. We refrain from concluding here that the differing language in the two subsections has the same meaning in each." *Id*. (internal quotations omitted). Whereas in *Russello*, the Supreme Court rejected the proposition that different sections should be read to impose the same restrictions despite the limiting language being present in only one section, the defendant in this case asks this Court to go even further and impose restrictions from a wholly different statute. This Court should reject such unfounded requests. It is improper to read into § 1117 the limitations contained in a separate statute when Congress did not include or apply those limitations.

      C.    <u>Section 1117 Is Not Limited to Extraterritorial Conduct like § 1119</u>

There is good reason why Congress did not insert the § 1119 limitations into the § 1117 conspiracy statute. Section 1119 applies only to purely extraterritorial crimes, a subject that Congress appears to have recognized implicates the sovereignty of other nations. It is reasonable therefore that Congress would have wished the Executive to tread carefully in conducting second prosecutions of murders that were already prosecuted by a foreign country, a matter that implicates national

8

sovereignty concerns. In contrast, § 1117 is not, by its terms, so confined and does not raise the same concerns.

Indeed, this case highlights the important distinctions and interests that counsel this Court to treat as separate §§ 1117 and 1119. For example, the substantive § 1119 offense can only be committed extraterritorially, because – by definition – the offense is committed outside of the jurisdiction of the United States, whereas a conspiracy under § 1117 can be committed within the jurisdiction of the United States or even in other nations separate from where the object of the conspiracy was completed (in this case the murder of Von Wiese). Indeed, in this case, many of the overt acts supporting the charges were committed in the United States and other nations, outside of Indonesia. Examples include obtaining passports for travel, securing funding to travel to Bali, travel through other nations done in furtherance of the conspiracy, and communicating plans and details concerning the murder while in the United States. Through the enactment of § 1117 without the limitations found in § 1119, Congress declared that the United States has an interest in prosecuting conspiracies involving the murder of its nationals by other United States nationals that may touch on the borders of the United States or other nations, apart from where the object of the conspiracy was completed. In this case, although the object of the conspiracy was completed in Indonesia, *i.e.*, the substantive offense of murder, the United States maintains an interest in Mack's and Schaefer's criminal conspiratorial activity to commit murder within its borders by its own nationals. This

underscores that fact that Congress did not tie the § 1119 limitations to the separate conspiracy statute under § 1117.

### III. Congress Had the Authority to Enact 18 U.S.C. § 1119

Defendant also argues that § 1119 is unconstitutional because Congress "lacked authority to enact it." Apart from this conclusory statement, the defendant offers no discussion, analysis, or any citation of authority to support it. The Motion requires the Court and the government to speculate as to the basis for her request. In any event, the defendant is incorrect – Congress has broad authority to enact laws that cover external affairs, such as the murder of U.S. nationals abroad.

and Congress has authority to regulate such conduct under the Commerce Clause.

It is notable that facial challenges to the constitutionality of federal statutes are "discouraged," *Sabri v. United States*, 541 U.S. 600, 609 (2004), and are "the most difficult challenge to mount successfully." *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Supreme Court instructs courts to approach such challenges with caution because they "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008) (internal quotation omitted).

For a facial challenge to succeed, the proponent must demonstrate "'no set of circumstances exist under which the Act would be valid,' *i.e.*, that the law is

10

unconstitutional in all of its applications." *Id.* at 449 (quoting *Salerno*, 481 U.S. at 745). And the court may strike down a statute only if "the lack of constitutional authority to pass the act in question is clearly demonstrated." *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 538 (2012) (quotation omitted). If, however, "the acts charged against [the defendants herself] [a]re well within the limits of legitimate congressional concern," the fact that it might not "be enforce[able] against someone else whose behavior would be outside the scope of Congress's Article I authority" is irrelevant. *Sabri*, 541 U.S. at 609.

It is noteworthy, that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). "Due respect for the decisions of a coordinate branch of Government demands that [courts] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000). The defendant's Motion fails to satisfy this heavy burden.

    A.    <u>The Foreign Murder Statute is Constitutional Under Congress' Broad Authority Over External Affairs</u>

There are two, non-binding, cases that have addressed this same issue, and both cases rely on the same rationale for upholding the constitutionality of § 1119. The defendant offers only a cursory argument why these courts' analyses was incorrect. The two cases that addressed the same issue raised in the defendant's Motion are *United States v. White*, 51 F.Supp.2d 1008 (E.D.Cal. 1997) and *United*

11

*States Brimager*, 2015 WL 4464117 (S.D.Cal. 2015). Both defendants in these cases were charged with the substantive offense under § 1119 and both defendants filed motions seeking to declare § 1119 unconstitutional on the same grounds as the Motion here. In upholding the constitutionality of § 1119, the District Courts in *White* and *Brimager* properly noted the distinction between Congress' authority to enact legislation over internal versus external affairs and correctly concluded that Congress has broad authority to enact laws covering the latter.

The *White* and *Brimager* courts relied heavily on the Supreme Court's holding in *United States v. Curtiss–Wright Export Corp.*, 299 U.S. 304 (1936). In that case dealing with a delegation of powers issue, the Supreme Court recognized the "differences between the powers of the federal government in respect to foreign or external affairs and those in respect of domestic or internal affairs." *Id.* at 315. "The broad statement that the federal government can exercise no powers except those specifically enumerated in the Constitution ... is categorically true only in respect to our internal affairs." *Id.* at 315–16.

In *Curtiss–Wright Corp.*, the Supreme Court emphasized that there are "fundamental differences between federal power in the domestic area, and federal power in relation to foreign affairs." *See White*, 51 F.Supp.2d at 1011, quoting *Curtiss–Wright Corp.*, 299 U.S. at 315–16. The Supreme Court in *Curtiss-Wright* used historical underpinnings of the formation of the federal government to explain the differences noting that "[a]s a result of the separation from Great Britain by the colonies, acting as a unit, the powers of external sovereignty passed from the Crown

12

not to the colonies severally, but to the colonies in their collective and corporate capacity as the United States of America." *Id*. at 316. "[S]ince the states severally never possessed international powers, such powers could not have been carved from the mass of state powers but obviously were transmitted to the United States from some other source." *Id*. The Supreme Court explained "it results that the investment of the federal government with the powers of external sovereignty did not depend upon the affirmative grants of the Constitution" thus permitting the federal government to enact statutes having extraterritorial effect. *Id*. at 318. "It is pellucid Congress possesses external sovereignty authority to pass criminal laws proscribing its nationals' outlaw conduct against other nationals abroad." *White*, 51 F.Supp.2d at 1011. The defendant's Motion never addresses why this rationale is incorrect or should otherwise be rejected.

Also, the Supreme Court's recent decision in *Gamble v. United States*, 139 S. Ct. 1960 (2019), further supports the constitutionality of § 1119. Although *Gamble* is about double jeopardy, and not about Congress' authority to enact criminal statutes with extraterritorial effect, the majority's opinion effectively recognized the constitutionality of statutes such as § 1119. In explaining how a single criminal act may be punished by both the states and the federal government, the Court used the example of a U.S. national murdered in another country, essentially using the same fact pattern in this case. The Supreme Court reasoned that the country where the murder occurred "could rightfully seek to punish the killer for committing an act of violence within its territory." *Gamble*, 139 S. Ct. 1960, 1967 (2019). At the same

13

time, the Supreme Court noted that "the murder of a U.S. national is an offense to the United States as much as it is to the country where the murder occurred and to which the victim is a stranger. That is why the killing of an American abroad *is a federal offense that can be prosecuted in our courts*, ... and why customary international law allows this exercise of jurisdiction." *Id*. (emphasis added). The Supreme Court's use of the murder of a U.S. national as an example, albeit in the double jeopardy context, is a strong statement concerning the constitutionality of federal criminal laws that concern the murder of U.S. nationals abroad.

It is also noteworthy that in *Gamble*, the Supreme Court cited to customary international law allowing this exercise of jurisdiction. Indeed, the *Brimager* court conducted an in-depth analysis tying Congress' authority to enact laws with extraterritorial effect to principles of international law. For instance, in upholding the constitutionality of § 1119, *Brimager* cited to the "territorial principle, which allows nations to punish acts that produce detrimental effects within their borders [and] the nationality principle, which is based on the nationality of the accused." *Brimager*, 123 F.Supp.3d at 1250 (citing the actual adverse consequences in the United States such as the substantial damage, loss, and harm sustained by the victim's family, friends, and community.). The rationale in *Brimager* remains applicable here and the defendant has offered no argument explaining why the *Brimager* court's analysis was incorrect.

14

B. <u>The Commerce Clause Also Authorized Congress to Enact Section 1119</u>

Congress also had the authority to enact § 1119 through the powers delegated in the Constitution's Commerce Clause. Indeed, the *Brimager* court also cited to the Commerce Clause in upholding the statute. Article I, § 8 of the United States Constitution, grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. Congressional power under the Commerce Clause "is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution." *United States v. Schaffner*, 258 F.3d 675, 678 (7th Cir.2001) (*citing Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 196, 6 L.Ed. 23 (1824)).

Here, the defendant claims that "Section 1119 has nothing to do with, and does not arise out of or relate to, 'foreign commerce.'" Motion at p. 4, para. 19. Without further elaboration, it is unclear what the defendant means when suggesting that § 1119 has "nothing to do" with foreign commerce. To the extent the defendant argues that foreign commerce was not implicated in this case, the Seventh Circuit's decision in *United Sates v. Vazquez*, 611 F.3d 325 (7th 2010) is instructive and specifically rebuts the defendant's claim. *Vazquez* upheld the constitutionality of the Sex Offender Registration and Notification Act (SORNA), which makes it a crime for sex offenders to travel in interstate or foreign commerce and fail to register. Like the defendant, Vasquez argued that SORNA was unconstitutional because it did not actually implicate commerce. *Id*. at 327 (SORNA "regulates purely local, non-economic activity and because it does not require any nexus between a defendant's

15

travel in interstate commerce and a defendant's failure to register violated the Commerce Clause.").

In rejecting this line of argument, *Vazquez* held that SORNA satisfied the Commerce Clause requirements and was thus constitutional. The Seventh Circuit noted that "there are three broad areas of activity that Congress may regulate under its commerce power: (1) the use of the channels of interstate commerce; (2) the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities; and (3) those activities having a substantial relation to interstate commerce. *Id. citing United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (internal quotations and citations omitted). "'[C]hannels'" are the interstate transportation routes through which persons and goods move and that 'instrumentalities' are the people and things themselves moving in commerce." *Vazquez*, 611 F.3d at 330.

*Vazquez* noted that SORNA "only criminalizes a [] failure to register when the sex offender is either required to register under federal law or travels in interstate or foreign commerce." *Id*. at 330 (internal quotations omitted). Against this backdrop, the Seventh Circuit reasoned that "[i]nterstate travel inherently involves use of channels of interstate commerce and is properly subject to congressional regulation under the Commerce Clause." *Id*. Applying this reasoning, the Seventh Circuit noted that "Vasquez, who had failed to register as a sex offender in Illinois, was undeniably a 'person … in interstate commerce' when he moved from Illinois to California, and traveled to California via the 'channels of interstate commerce.'" *Id*.

16

As noted above, a facial challenge requires the defendant "to successfully establish that no set of circumstances exists under which the [§ 1119] would be valid." Simply stating that § 1119 has nothing to do with foreign commerce ignores the massive amount of evidence in this case implicating foreign commerce, as recognized by the Seventh Circuit in *Vazquez*. For example, (a) Mack and Schaefer used the airlines to travel from Chicago to Bali; (b) the victim traveled from Chicago to Indonesia and, as required by § 1119, was murdered outside of the United States and in the jurisdiction of another country; (c) Mack and Schaefer communicated with each other between the United States and the Bali using cellular telephones to plan and execute the murder of Von Wiese; and (d) Mack, while in Bali, used her mother's U.S-based credit card, to book Schaefer's airline tickets to travel from Chicago to Bali for the purpose of murdering Von Wiese. If simply moving across a state line was sufficient in *Vazquez*, the abundance of additional facts implicating foreign commerce in this case means that the defendant has not satisfied the heavy burden required for a facial constitutional challenge. *Salerno*, 481 U.S. at 745. For these reasons, § 1119 was properly enacted pursuant to the authority granted to Congress' by Commerce Clause.

## VI. Conclusion

For the foregoing reasons, the government respectfully requests that the Court deny the defendant's Motion to Dismiss Count Two of the Indictment.

Respectfully submitted.

| | |
|---|---|
| JOHN R. LAUSCH, JR.<br>United States Attorney | KENNETH A. POLITE, JR.<br>Assistant Attorney General<br>Criminal Division |
| By:    */s/ Ann Marie E. Ursini*<br>ANN MARIE E. URSINI<br>Assistant United States Attorney<br>219 S. Dearborn Street, Rm. 500<br>Chicago, Illinois 60604 | By:    */s/ Frank G. Rangoussis*<br>FRANK G. RANGOUSSIS<br>Senior Trial Attorney<br>Human Rights and Special<br>Prosecutions Section<br>1301 New York Avenue, N.W.<br>12th Floor<br>Washington, D.C. 20530 |

**CERTIFICATE OF SERVICE**

    I, Ann Marie E. Ursini, an attorney, certify that I served a copy of the foregoing Joint Status Report by filing the same using the CM/ECF System, and that a copy will be provided to all parties of record designated to receive notice.

                              Respectfully submitted.

                              JOHN R. LAUSCH, JR.
                              United States Attorney

By:   */s/ Ann Marie E. Ursini*
        ANN MARIE E. URSINI
        Assistant United States Attorneys
        219 S. Dearborn Street, Rm. 500
        Chicago, Illinois 60604