**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JUN 16 2023

JUDGE MATTHEW F. KENNELLY
UNITED STATES DISTRICT COURT

UNITED STATES OF AMERICA

v.

HEATHER L. MACK

No. 17 CR 518

Judge Matthew F. Kennelly

## PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and KENNETH A. POLITE, JR., Assistant Attorney General for the Criminal Division (collectively, "the government"), and defendant HEATHER L. MACK, and her attorneys, JEFFREY STEINBACK and MICHAEL LEONARD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A) and Rule 11(c)(1)(C), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2. The indictment in this case charges defendant with conspiracy, while located within the jurisdiction of the United States, to murder a citizen of the United States in a place outside the United States, in violation of Title 18, United States Code, Section 956(a)(1) and (2)(A) (Count 1); conspiracy, by a national of the United States, to kill and attempt to to kill a national of the United States while such national was outside the United States but within the jurisdiction of another country, in violation of Title 18, United States Code, Section 1119, all in violation of Title 18,

United States Code, Section 1117 (Count 2); and obstruction of justice, in violation of Title 18, United States Code, Section 1512(c)(1) and 2 (Count 3).

3.      Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney(s). Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charge to Which Defendant Is Pleading Guilty

4.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count Two, which charges defendant with conspiracy to kill a United States national, in violation of Title 18, United States Code, Section 1117.

## Factual Basis

5.      Defendant will plead guilty because she is in fact guilty of the charge contained in Count Two of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

Beginning not later than on or about August 2, 2014, and continuing until on or about August 12, 2014, at Chicago, in the Northern District of Illinois and elsewhere, defendant HEATHER L. MACK and Tommy Schaefer, who were both United States nationals, conspired to kill and attempt to kill Shelia A. Von Wiese, a national of the United States, while Von Wiese was outside of the United States but

2

within the jurisdiction of the Republic of Indonesia, in violation of Title 18, United States Code, Section 1119, all in violation of Title 18, United States Code, Section 1117.

MACK was the daughter of Von Wiese. In 2014, both MACK and Von Wiese were residents of the Northern District of Illinois and were United States nationals. In or around 2013, MACK and Schaefer, also a United States national, became involved in a romantic relationship with each other. Several text messages between MACK and Schaefer illustrated the romantic relationship between them, with Schaefer professing his love for MACK many times and indicating he would do anything for her. For example, on August 5, 2014, Schaefer texted MACK: "I want my kids mother to be heather Mack… I would do anything for you I really would…im your other half baby use me. I love you enough to do anything for my queen."

In or around August 2014, MACK and Schaefer agreed to kill Von Wiese while Von Wiese and MACK were vacationing in Bali, Indonesia. As part of the agreement, MACK communicated to Schaefer that she intended to share the proceeds of Von Wiese's estate with Schaefer once Von Wiese was dead.

On August 2, 2014, MACK and Von Wiese departed O'Hare International Airport in Chicago, Illinois, heading for a vacation in Bali, Indonesia. MACK and Von Wiese arrived in Bali on August 4, 2014. MACK acknowledges that Bali is within the jurisdiction of the Republic of Indonesia.

3

While MACK and Von Wiese were travelling to Bali, Schaefer was still in Chicago. As MACK was en route to Indonesia, she and Schaefer exchanged several text messages discussing their plot to kill Von Wiese. In text exchanges with MACK and others, Schaefer, who was unemployed, expressed excitement over the prospect of sharing in the inheritance which Schaefer believed MACK would receive and share with Schaefer upon the death of Von Wiese. For example, on August 2, 2014, the day MACK and Von Wiese left O'Hare Airport to fly to Chicago for Bali, Schafer texted MACK, "I can't wait to be rich...I seriously can't wait. I'm so geeked. I'm like thinking of lavish lifestyles...the world runs on money It's crazy..." to which MACK responded, "lmao...Im in the [airport] lounge now...I love you...I'm about to board."

On August 9, 2014, MACK and Von Wiese checked into room 317 at the Bali St. Regis hotel in Bali, Indonesia. On August 10, 2014, MACK used Von Wiese's credit card to purchase an airline ticket for Schaefer to travel from Chicago to Bali. MACK also used Von Wiese's credit card to reserve a separate room for Schaefer at the St. Regis for one night. Before Schaefer's arrival in Bali, MACK texted instructions on what Schaefer should do upon his arrival. For instance, MACK texted Schaefer that he should, "say your coming to see your friend heather at the st regis when the guy [picked] you up...[w]e gotta talk in person...[a]nd Ill (sic) meet you in the lobby. Don't say anything about my mom just say you're visiting heather if they ask." MACK was attempting to conceal from Von Wiese Schaefer's presence in Bali.

4

On August 10, 2014, Schaefer departed O'Hare International Airport, and arrived in Bali just after midnight on August 12, 2014. Soon after, Schaefer and MACK met on the beach just outside the St. Regis hotel. After, in the early morning hours of August 12, 2014, Schaefer sent a text message to a relative, stating in part, "you wouldn't believe…shawty rose…she [MACK] wants me to do right now while she is snoozing."

MACK and Schaefer then exchanged text messages discussing when and how to commit the murder of Von Wiese. For instance, on August 12, 2014, Schaefer sent a text message to MACK, "cant we sfcate (sic) her together … put your hand over her moutg (sic)" and, "let me just creep up and wack her … once I do it she was drunk and slipped and fell." MACK responded, "okay [] just knock her out."

Schaefer also texted MACK, "… get her weak," which MACK understood to be a reference to Von Wiese, and "I promise you heather … [r]elax … [u]r (sic) Bonnie do it," which MACK understood to be a reference to Bonnie and Clyde. MACK texted Schaefer that "… I need you in here too," referring to room 317, where Von Wiese was located. Schaefer asked MACK, "can you wack her in the head with a big ass pole … trust me [w]e got nothin to lose right now."

While MACK was alone in room 317 with Von Wiese on August 12, 2014, she texted Schaefer, "i (sic) need your help … [y]ou could just put your hand over her and i (sic) could grab her body." Schaefer responded "[f]uck … must knock her out … I'm finding something right now … I'll do it." Shortly after, Schaefer texted MACK, "come

5

in the hallway right now … I'm gonna slow af [as fuck] and do it." MACK told Schaefer to be "slow [] quiet." MACK also texted Schaefer that it was "too dangerous to not do it … you have to come in …." and "just do what you can ill (sic) need you[r] help … don[']t let her yell … [g]ive her a minute to be off guard."

Shortly after this series of text messages, Schaefer entered room 317, where MACK and Von Wiese were present, and using the metal handle of a fruit bowl, Schaefer repeatedly beat Von Wiese in the head and face. Von Wiese died shortly thereafter.

MACK acknowledges that an autopsy conducted of Von Wiese concluded that the cause of death was blunt force of blows which caused fractures to Von Wiese's nasal bone and jawbone and obstructed her airway, and that Von Wiese's body bore defensive wounds.

After Von Wiese was killed, MACK and Schaefer took steps to conceal evidence of the murder. MACK and Schaefer placed bloodied linens in suitcases or otherwise hid them in the St. Regis hotel, and replaced the sheets in MACK and Von Wiese' hotel room with clean sheets from Schaefer's hotel room. MACK and Schaefer placed Von Wiese's body into a suitcase; placed the suitcase containing Von Wiese's body on a luggage trolly; wheeled the trolly to the hotel lobby; left the hotel lobby; and then placed the suitcase into the trunk of a taxi outside the hotel.

MACK and Schaefer unsuccessfully attempted to leave the hotel in the taxi. When the driver of the taxi would not accept their fare, MACK told hotel employees

6

that she was going to go call her mother, well knowing at the time that Von Wiese was dead. MACK and Schaefer left the hotel and abandoned the suitcase containing Von Wiese's body in the taxi.

After leaving the St. Regis, MACK and Schaefer checked into a different hotel, the Risata. At the Risata, MACK used the false name "Hannah Mackenzie" to check in, and falsely claimed she had been robbed the previous night and therefore did not have identification.

The same day, MACK called the doorman at the building where she and Von Wiese lived in Chicago and falsely claimed that she and Von Wiese were being held hostage, that Von Wiese was arguing with the kidnappers, and asked if any "weird" people had come around the building in Chicago. MACK also contacted a family friend in Europe and told them that Von Wiese had been kidnapped and asked for advice about what to do.

MACK and Schaefer were arrested at the Risata by Indonesian authorities on the morning of August 13, 2014, the day after the murder. MACK falsely claimed to Indonesian police that Von Wiese had been kidnapped by masked intruders at the hotel, though she later provided different information to Indonesian authorities.

### Maximum Statutory Penalties

6. Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

a. A maximum sentence of life imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than five years.

b. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty imposed.

c. Defendant further understands that the Court may order restitution to the victim's estate in the amount determined by the Court.

### Sentencing Guidelines Calculations

7. Defendant understands that, in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the

8

kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

8. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the 2021 Guidelines Manual.

b. **Offense Level Calculations**.

i. The base offense level is 43, pursuant to Guidelines §§ 2A1.5(c)(1) and 2A1.1(a).

ii. The offense level is increased by 2 levels because the denfendant willfully obstructed and impeded or attempted to obstruct and impede the administration of justice with respect to the investigation of the instant offense, pursuant to Guideline § 3C1.1.

iii. A court in the Republic of Indonesia sentenced the defendant to 10 years' imprisonment, of which she served approximately 7 years, for the Indonesian crime of "Deliberately Aiding in the Commission of Premeditated Murder" related to the murder of Von Wiese. Pursuent to Guideline 5K2.23, a downward departure is authorized but not required, because the defendant served

9

the above-referenced sentence in Indonesia for an offense which is relevant conduct to the instant offense. This Guideline section does not identify a particular number by which the offense level should be adjusted. Instead, Guideline 5K2.23 provides that "[a]ny such departure should be fashioned to achieve a reasonable punishment for the instant offense."

   iv. If the Court determines at the time of sentencing that defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level will be appropriate. Defendant understands that the position of the government will be that defendant has not accepted responsibility within the meaning of Guideline § 3E1.1(a).

   v. If the Court determines that defendant has fully accepted responsibility within the meaning of Guideline § 3E1.1(a), and that the offense level is 16 or higher prior to the application of any reduction for acceptance of responsibility pursuant to § 3E1.1(a), the government will move for an additional one-level reduction in the offense level pursuant to Guideline § 3E1.1(b) because defendant has timely notified the government of her intention to enter a plea of guilty, thereby

permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, if the offense level does not contain a reduction for acceptance of responsibility, the anticipated offense level is 43, pursuant to Guideline Ch. 5 Pt. A, App. Note 2, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of life imprisonment. If the offense level is decreased by three levels for acceptance of responsibility, the anticipated offense level is 42, which, when combined with the anticipated criminal history category of I, results in an anticipated sentencing guidelines range of 360 months to life imprisonment. In addition, the court may impose supervised release and a fine.

e. Defendant and her attorneys and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case.

11

Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

9. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Agreements Relating to Sentencing**

10. This Agreement will be governed, in part, by Fed. R. Crim. P. 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall not exceed a term of imprisonment in the custody of the Bureau of Prisons of 336 months (28 years). Each party remains free to recommend to the Court any sentence it deems appropriate.

11.     It is the government's position that the agreed maximum term of imprisonment of 336 months adequately accounts for the defendant's service of a term of imprisonment of approximately 7 years arising from the Indonesian conviction referred to in paragraph 8(b)(iii) above, and that no additional sentence reduction based on defendant's Indonsian term of imprisonment is appropriate. It is the defendant's position that a further reduction is appropriate, and defendant shall have the right to present whatever arguments she wishes to the Court on this issue.

12.     Other than the agreed maximum term of imprisonment, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes no more than the agreed term of incarceration set forth above, defendant may not withdraw this plea as a matter of right under Fed. R. Crim. P. 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this Agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this Agreement.

13.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code,

Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

15.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution to the vicitm's estate in an amount to be determined by the Court at sentencing, which among shall reflect credit for any funds repaid prior to sentencing.

16.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United Staets Code, Section 3664(k), she is required to notify the Court and the government of any material change in economic circumstances that might affect her ability to pay restitution.

17.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

18.     This Agreement is entirely voluntary and represents the entire agreement between the government and defendant regarding defendant's criminal liability in case 17 CR 518, *United States v. Heather L. Mack*.

14

19.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and the Human Rights and Special Prosecutions Section of the Criminal Division, and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

20.     Defendant understands that, by pleading guilty, she surrenders certain rights, including the following:

a.     **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney

15

would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iii.  If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

   iv.  If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

   v.  At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

   vi.  At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear

voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

  b.  At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

  c.  **Waiver of appellate and collateral rights**. Defendant further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal her conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change

17

in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

21.     Defendant understands that, by pleading guilty, she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

22.     Defendant understands that the government in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

23.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the government regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline

18

§ 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

24. For the purpose of monitoring defendant's compliance with her obligations to pay a fine during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the government of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

25. Defendant agrees to cooperate with the government in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the government.

### Conclusion

26. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27. Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any

term of the Agreement is a violation of the Agreement. Defendant further understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

28.     Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___6 - 16 - 2023___

| | |
|---|---|
| MORRIS PASQUAL<br>Acting United States Attorney | HEATHER L. MACK<br>Defendant |
| ANN MARIE E. URSINI<br>Assistant U.S. Attorney | MICHAEL LEONARD<br>Attorney for Defendant |
| KENNETH A. POLITE, JR.<br>Assistant Attorney General | JEFFREY STEINBACK<br>Attorney for Defendant |
| By FRANK G. RANGOUSSIS<br>Senior Trial Attorney | |

21